Brandi L. Harper, SBN 264672
Brandi@CastilloHarper.com
Joseph N. Bolander, SBN 280857
Joe@CastilloHarper.com
**CASTILLO HARPER APC**
6848 Magnolia Ave, Ste. 100
Riverside, CA  92506
Telephone: (909) 466-5600
Facsimile:  (909) 466-5610

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON ADAMS; on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF BALDWIN PARK; and DOES 1 THROUGH 10, inclusive,<br><br>Defendant. | Case No.: 2:19-cv-00297-PA-GJS<br><br>*Hon. Percy Anderson*<br><br>**JOINT REQUEST FOR APPROVAL OF SETTLEMENT AGREEMENT** |

**The Parties to the above-captioned actions stipulate as follows:**

1.     WHEREAS, the above referenced putative collective action under the Fair Labor Standards Act ("FLSA") was filed on January 15, 2019 (Case No. 2:19-

---

1
JOINT REQUEST FOR APPROVAL OF SETTLEMENT AGREEMENT

cv-00297-PA-GJS) (the "Action"), alleging that the City of Baldwin Park ("Defendant") violated the overtime payment provisions of the FLSA.

2. WHEREAS, Plaintiffs are presently or were previously employed by the Defendant in its Police Department. Plaintiffs and Defendant shall be collectively referred to herein as the "Parties."

3. WHEREAS, the Court has jurisdiction over the subject matter of the Actions and over the Parties.

4. WHEREAS, the Complaint alleges that Defendant owes back overtime pay to Plaintiffs and similarly situated former and/or current employees because Defendant allegedly did not include compensation paid to employees in lieu of health benefits or cafeteria plan contributions into the regular rate of pay used to compensate FLSA overtime hours. Prior to this action, Defendant made payments to Plaintiffs for the failure to include cafeteria plan contributions in the regular rate of pay, however, those payments did not include compensation for a third year of liability (29 U.S.C. § 255) or liquidated damages (29 U.S.C. § 216(b)).

5. WHEREAS, the Complaint seeks to recover this allegedly owed unpaid overtime compensation, as well as liquidated damages, attorney's fees, and costs on behalf of Plaintiffs and all those similarly situated.

6. WHEREAS, Defendant has filed an Answer to the operative Complaint denying Plaintiffs' allegations and asserting affirmative defenses to the claims for relief set forth therein. Defendant continues to assert in good faith that it is not liable for a third year of overtime pay or liquidated damages.

7. WHEREAS, a bona fide dispute exists between the Parties as to Defendant's liability and the extent thereof under the FLSA.

8. WHEREAS, the Parties have engaged in extensive negotiations in good faith in an attempt to resolve their differences, and throughout these

negotiations all Parties were, and continue to be, represented by counsel experienced in labor and employment matters.

9. WHEREAS, the Parties wish to avoid the uncertainty, expense and delay of litigation and have therefore reached an agreement. The terms of the Parties' agreement are embodied in the Settlement Agreement and General Release ("Settlement Agreement") that all Parties will execute upon approval by this Court. Plaintiffs have obtained 66 signed agreements, and are in the process of collecting the remaining signatures.  A copy of the Settlement Agreement is attached hereto and incorporated herein. By entering into this Settlement Agreement, Defendant does not admit, and continues to expressly deny, any liability for the claims alleged in the Action. Within 10 business days of the Court's approval of the Settlement Agreement, Defendant will sign the Settlement Agreement. Within 5 business days of Defendant's signature, Plaintiffs will file the fully executed Settlement Agreement with the Court along with a request for dismissal of the Action.

10. WHEREAS, courts have determined that the provisions of the FLSA are mandatory and cannot generally be waived by contract or otherwise—unless the settlement agreement is approved by the Court or the Department of Labor. (See, e.g., *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

11. WHEREAS, however, when employees bring a private action for compensation under the FLSA, and present the district court a proposed settlement, the district court may enter a judgment after reviewing the settlement for fairness. (*Id*. at p. 1353.) If the proposed settlement reflects a reasonable compromise over issues that are actually in dispute, the Court has the power to approve the settlement "to promote the policy of encouraging settlement of litigation." (*Id*. at 1354).

12. WHEREAS, district courts in the Ninth Circuit follow *Lynn's Food Stores*. (*Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1172

(S.D. Cal. 2016) (FLSA claims may be waived through court supervised settlement agreement) (citation omitted); *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333–34 (N.D. Cal. 2014) (court has the power to approve FLSA settlement that is "a fair and reasonable resolution of a bona fide dispute") (citation omitted)).

13. WHEREAS, Plaintiffs' counsel and Defendant's counsel, after extensive negotiations that were facilitated by their freely sharing payroll and other information, negotiated a complete settlement of the case which included Defendant's payment of a third year of back wages for cash-in-lieu payments with an additional sum for liquidated damages, and an agreement to pay out accrued compensatory time at the regular rate of pay going forward.

14. WHEREAS, the Parties have informally exchanged information in pursuance of settling the Action, and believe that the settlement amounts, as well as the method of calculating the amounts, are fair and consistent with and within the range of the maximum results Plaintiffs and putative plaintiffs could expect to obtain at trial.

15. WHEREAS, the Parties believe the agreed-upon amounts to be paid to Plaintiffs' counsel are fair and reasonable.

16. WHEREAS, the Parties jointly request the Court find the settlement to be a fair, reasonable and just negotiated resolution of a bona fide dispute, and that this Court approve of the stipulated Settlement Agreement.

17. WHEREAS, by entering into this Stipulation and requesting Court approval, the Parties do not intend that the Court should make any findings or determination regarding the law. This Stipulation, and any exhibits and any other documents or written materials prepared in conjunction with this Stipulation, should not constitute evidence of, or any admission of, any violation of the FLSA, or any other federal or state law, regulation, or rule by any Party.

IT IS THEREFORE STIPULATED, by and between the Parties, through their respective counsel, that:

1. The Settlement Agreement contains a fair and just negotiated resolution to the current disputes between the Parties as set forth in the Action;
2. The Court should approve the Settlement Agreement by signing the Order attached hereto;
3. The Court should reserve jurisdiction over the Action for the purposes of enforcing the Settlement Agreement;
4. Upon the Court's approval of the Settlement Agreement and within the timeframes specific in Paragraph 9 of this Stipulation, Defendant will execute the Settlement Agreement and Plaintiffs will file the fully executed Settlement Agreement with the Court with a request for dismissal, at which point the Court will dismiss the Action.

Respectfully submitted,

Date: September 4, 2019        **CASTILLO HARPER, APC**

s/Joseph N. Bolander_____
Brandi L. Harper
Joseph N. Bolander[1]
Attorneys for Plaintiffs

Date: September 4, 2019        **RICHARDS WATSON &GERSHON**
**A Professional Corporation**

s/Rebecca Green_____
Jennifer Petrusis
Rebecca Green
Attorneys for Defendant, the City of Baldwin Park

---

[1] Pursuant to Local Rule 5-4.3.4(2),the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

# EXHIBIT "A"

## **SETTLEMENT AGREEMENT**

This Settlement Agreement and Release ("Agreement") is entered into between Jason Adams and other similarly-situated employees of the Baldwin Park Police Department (collectively, "Plaintiffs"), and Defendant the City of Baldwin Park (the "City"), collectively, the "Parties," to settle, fully and finally, all of the Released Claims (as defined below).

## **RECITALS**

1. On January 15, 2019, Jason Adams, on behalf of himself and other similarly situated City employees in the Baldwin Park Police Association ("Association"), filed a Complaint in the United States District Court, Central District of California, entitled *Adams v. the City of Baldwin Park,* Case No. 2:19-cv-00297-PA-GJS (the "Action"). The Complaint alleges that the City's method of calculating the employees' regular rate of pay resulted in the under-payment for overtime hours worked, in violation of the Fair Labor Standards Act (FLSA).

2. 84 Association members have filed written consents to join the Action. 8 Association members have not yet filed their consents, and are thus putative plaintiffs. All plaintiffs and putative plaintiffs are listed in Exhibit A, attached hereto and incorporated herein by reference, and shall be referred to collectively herein as "Plaintiffs."

3. The City filed its Answer and Affirmative Defenses to the Complaint on April 1, 2019, denying all liability.

4. The City contends that it has fully complied with its obligations under the FLSA, and had, prior to this Action, fully remunerated Plaintiffs for any inadvertent errors in its method of calculating their regular rate of pay by paying Plaintiffs a sum total of $359,788.63 following the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016). The City contends that it operated at all times in good faith.

5. The Parties desire to settle this Action to avoid protracted litigation and to preserve the good working relationship between the City, Plaintiffs, and the Association.

6. This Agreement is made in consideration of the facts and recitals set forth herein. The Parties understand, acknowledge, and agree that this Agreement constitutes a compromise of all the disputed claims at issue between the Parties in the Action and that it is the desire and intention of each of the Parties to effect a final and complete resolution of the Action.

7. Plaintiffs and their counsel: (1) have examined and considered the benefits to be provided to Plaintiffs under this Agreement (the "Settlement," as defined below); (2) have considered the applicable law and the claims that have been and could have been asserted in the Complaint arising out of or relating to the payment of overtime wages under the FLSA; and (3) believe the Settlement to be fair, reasonable, and adequate, and in the best interest of Plaintiffs, taking into account the benefits provided to Plaintiffs through the terms of the Agreement, the risks and stresses of litigation, and the length of time that would be required to complete the litigation and any appeals.

8.     The Parties further acknowledge that this Settlement is a compromise of disputed claims reached in order to promote good governance and workplace relations, and that the City is not in any way admitting liability by entering into this Agreement.  The City has at all times disputed, and continues to dispute, the allegations in the Action and denies any liability for any of the claims that have or could have been raised in the Action, but believes that the Settlement as provided in this Agreement will avoid the substantial expense and disruption of continued litigation, and will promote public confidence in the City and its compliance with the FLSA.

9.     The Parties believe that the Settlement is fair, reasonable, and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors, and will materially benefit the Plaintiffs. The Parties recognize the uncertainty, risk, expense, and delay attendant to continuing the Action through trial and any further appeals following trial.  Accordingly, the Parties desire to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or relating to the Action.

Therefore, in consideration of the promises and agreements contained herein, the Parties agree and covenant as follows:

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated by reference, and the following considerations, provisions, mutual promises, and agreements contained herein, it is hereby agreed by and between the Parties that all claims, contentions, allegations, and causes of action that have been asserted, or that could have been asserted, in connection with the Action, are to be compromised and settled without any admission of liability or concession by the City that the contentions of Plaintiffs are correct, on the following terms:

1. <u>Effective Date.</u> This Agreement shall be effective upon the occurrence of both: (1) the full execution of this Agreement by the Parties and their attorneys; and (2) issuance of a Final Approval Order by the Court.

2. <u>Consideration to Plaintiffs</u>.

    (A) The City has allocated a total settlement amount of two hundred fifty-three thousand dollars ($253,000.00) (the "Total Settlement").  From the Total Settlement, the City shall pay two hundred and thirty-eight thousand dollars ($238,000.00) dollars to Plaintiffs to settle the claims asserted in the Action (the "Damages Payment").  The Damages Payment represents a two-thirds increase of the previously paid amount of $359,788.63 to account for an additional year of overtime pay and a sum to settle Plaintiffs' claims for liquidated damages.

    (B) In addition to the Damages Payment, the City shall also pay twenty-five thousand dollars ($25,000.00) to Plaintiffs' counsel for his fees incurred in the Action. The Parties agree that the attorneys' fees are fair and reasonable, given that they amount to 9.88% of the Total Settlement.

(C) The amount paid to each Plaintiff shall be a pro rata distribution of the total Damages Payment, based upon the number of overtime hours worked during the applicable time period, and each Plaintiff's respective regular rate of pay. The City shall provide Plaintiffs' counsel with documentation of Plaintiffs' overtime hours. The amounts to be received by each Plaintiff are listed in Exhibit B, attached hereto.

(D) The amount paid to each Plaintiff shall be allocated as 50% wages, subject to all legally required withholdings, and 50% settlement of Plaintiffs' claims to liquidated damages. Each Plaintiff's signature on this Agreement constitutes an acknowledgement that the amount received by that Plaintiff is accepted as fair, just, and reasonable, and constitutes a full and complete payment in resolution of all claims asserted, or that could have been asserted, in the Action.

(E) From the Effective Date going forward, the City agrees to pay Plaintiffs for cashed out compensatory time, pursuant to the Compensatory Time provision of the Memorandum of Understanding in effect at the time this Agreement is executed, at the regular rate of pay.

3. <u>Process for Resolution of Claims of Putative Plaintiffs</u>. The Parties agree to offer the amounts identified in Exhibit B to putative plaintiffs who have not yet filed written consents to join the Action, pursuant to the following conditions:

(A) The City shall mail the Notice of Collective Action Settlement: Claim Form & Release (the "Notice"), attached as Exhibit C, to all putative plaintiffs at their last known address on file with the City.

(B) The Notice shall set forth each putative plaintiff's damages payment, calculated pursuant to Paragraph 2(C) above. The City shall provide Plaintiffs' attorney with verification that the City served the Notice on all putative plaintiffs.

(C) Each putative plaintiff who accepts the terms of the Agreement must execute and return the Notice to the City, thus agreeing to be bound by the terms of the Agreement. If a putative plaintiff does not accept the settlement offer made by the City, he or she shall not be bound by this Agreement, and shall not receive his or her allocated payment. The total Damages Payment shall be reduced in the amount of any payment allocated to a putative plaintiff who does not accept the settlement offer.

4. <u>Method of Payment</u>. Within thirty (30) days of the Effective Date, the City shall tender payment under the following terms:

(A) The City shall tender a check to each Plaintiff who timely executes the Notice, representing the amount set forth in Exhibit B. For the wage portion (50%) of each individual payment, the City shall make all required withholdings, pursuant to the Plaintiff's W-4 form on file with the City. Plaintiffs who are no longer

    employed by the City shall submit updated W-4 forms before the City processes their individual payments. The remaining balance (50%) of each individual payment shall not be subject to withholdings by the City.

  (B) The Parties believe that payments made in settlement of liquidated damages claims are not wages, and therefore such portions of the individual payments to Plaintiffs shall not be subject to withholding by the City. However, such payments are taxable as part of each Plaintiff's gross income. This statement of belief is not an opinion on which Plaintiffs may rely, and therefore Plaintiffs are encouraged to consult with a tax advisor or attorney to determine any tax consequences of their individual damages payments.

  (C) Plaintiffs are solely responsible for reporting amounts received pursuant to this Agreement to any applicable federal, state, or local agency as required by law. The City will issue an IRS Form 1099 to each Plaintiff in the amount of their respective payments received as settlement for liquidated damages claims.

  (D) The City shall tender a check in the amount of $25,000.00 to the law firm of Castillo Harper, APC, as payment for attorneys' fees incurred in connection with this Action. Except as otherwise expressly provided herein, each of the Parties shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with the Action, including the negotiation and preparation of the Agreement.

5. <u>Resolution of Dispute</u>. The Parties agree and understand that this Agreement resolves any and all disputes between them related to the Action and the matters set forth in the Action.

6. <u>Dismissal of the Action</u>. The Parties submit to the Court the Stipulation and Order, attached hereto as Exhibit D, dismissing the entire Action with prejudice on behalf of all Plaintiffs. Plaintiffs warrant that no other complaint, claim, grievance, or charge for overtime compensation has been filed against the City in any court or administrative agency.

7. <u>Release</u>.

  (A) "Released Claims" shall mean all wage and hour claims that were or could have been raised in the Action, including, but not limited to, all claims brought under the FLSA or the California Labor Code; all claims relating to or arising from the payment, non-payment, or under-payment of wages or other monetary compensation by the City to Plaintiffs; and all claims relating to or arising from the calculation of overtime payments, compensatory time payouts, and holiday and sick leave payouts.

  (B) "Releasees" shall mean the City, its present and former officers, officials, partners, agents, employees, attorneys, insurers, assigns, and successors in interest.

  (C) By executing this Agreement, Plaintiffs release all Releasees from the Released Claims, which shall thereby be conclusively settled, compromised, satisfied, and

released. In connection with such release of claims, Plaintiffs hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they may have against the Releasees. In furtherance of such intention, the release herein shall be and remain in effect as a full and complete general release of all Released Claims.

8. <u>Warranty of Non-Assignment</u>. The Parties warrant that they have not assigned any of the claims or portions of the claims that are the subject of this Agreement.

9. <u>No Unwritten Representations</u>. The Parties warrant that they have not relied upon any representation, promise, or statement not expressly contained in this Agreement.

10. <u>Complete Agreement</u>. This Agreement is the complete agreement between the Parties and supersedes any prior agreements or discussions between the Parties.

11. <u>Governing Law</u>. This Agreement is executed in the State of California, and shall be governed, construed, and enforced in accordance with the laws of the State of California without giving effect to doctrines related to conflicts of law.

12. <u>Interpretation and Construction</u>. Any ambiguities or uncertainties herein shall be equally and fairly interpreted and construed without reference to the identity of the party or parties preparing this Agreement or the documents referred to herein, on the understanding that the Parties participated equally in the negotiation and preparation of the Agreement or have had equal opportunity to do so. This Agreement has been arrived at through negotiation and none of Parties is to be deemed the party who prepared the Agreement or caused any uncertainty to exist within the meaning of Civil Code section 1654. The headings and sub-headings used herein are for reference only and shall not affect the construction of the Agreement.

13. <u>Breach, Waiver, and Amendment</u>. No breach of this Agreement or of any provision herein can be waived except by an express waiver executed by the party waiving such breach. Waiver of any one breach shall not be deemed a waiver of any other breach of the same or any other provision of the Agreement. This Agreement may be amended, altered, modified, or otherwise changed in any respect only by a writing duly executed by the Parties or their authorized representatives.

14. <u>Authority to Execute</u>. Each party hereto warrants that he or it has the full power and authority to execute, deliver, and perform under this Agreement.

15. <u>Counterparts</u>. This Agreement may be executed by the Parties in any number of counterparts, all of which taken together shall be construed as one document.

16. <u>Duty to Act in Good Faith</u>. The Parties shall act in good faith and use their reasonable good faith efforts after the execution of the Agreement to ensure that their respective obligations hereunder are fully and timely performed. The Parties shall promptly perform any further acts and

execute and deliver any other documents or instruments that may be reasonably necessary to carry out the provisions of this Agreement.

17. <u>Effectiveness, Amendments, and Binding Nature</u>.  This Agreement may be amended only by written agreement signed by the Parties.  Except as otherwise stated above, each of the Parties expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by the party to be true or applicable, this Agreement shall nevertheless remain effective.  This Agreement is binding on, and shall inure to the benefit of, the Parties and their respective agents, employees, representatives, officers, directors, parents subsidiaries, assigns, executors, administrators, insurers, and successors in interest.

18. <u>Time for Performance</u>.

  (A) Upon approval by the Court, the Notice shall be mailed to putative plaintiffs pursuant to Paragraph 3(A) of this Agreement within 10 days of the Court's filing its Order approving the settlement.  Putative plaintiffs shall have 90 days to execute the Notice and return it to the City.

  (B) The Agreement shall be submitted to the City Council for its approval within 30 days of the Court's filing its Order approving the settlement.

  (C) Payment of attorneys' fees to Castillo Harper, APC, shall occur no later than ten (10) calendar days after the City Council approves the Agreement.

  (D) Payment of the individual Damages Payments to Plaintiffs shall occur no later than 30 calendar days after the Effective Date of the Agreement, for plaintiffs who have filed written consents to join the Action prior to the Court's approval of the settlement.  For putative plaintiffs who join the class after the Court's approval of the settlement, payment shall occur within 30 calendar days of each plaintiff's execution of a consent form.

///

///

///

///

///

///

///

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

                                                                                **Plaintiffs Jason Adams, *et al*.**

Dated: _____, 2019

                                                                                Signature:_____

                                                                                Name:_____
                                                                                **[Print]**

Dated: _____, 2019

                                                                                Signature:_____

                                                                                Name:_____
                                                                                **[Print]**

Dated: _____, 2019

                                                                                Signature:_____

                                                                                Name:_____
                                                                                **[Print]**

Dated: _____, 2019

                                                                                Signature:_____

                                                                                Name:_____
                                                                                **[Print]**

Dated: _____, 2019

                                                                                Signature:_____

                                                                                Name:_____
                                                                                **[Print]**

Dated: _____, 2019

                                                                                Signature:_____

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

Dated: _____, 2019        **City of Baldwin Park**, a California Municipal Corporation

                              Signature:   _____
                              Name   :
                              Title:

**APPROVED AS TO FORM:**

Dated: _____, 2019        **Richards, Watson & Gershon**
                                         Jennifer Petrusis

                              By: _____
                                         Jennifer Petrusis
                                         Counsel for City of Baldwin Park

Dated: _____, 2019        **Castillo Harper**
                                         Brandi L. Harper
                                         Joseph N. Bolander

                              By: _____
                                         Brandi L. Harper
                                         Joseph N. Bolander
                                         Counsel for Plaintiffs Jason Adams, et al.

POA OT CAFE RETRO PAY HISTORY SEARCH RESULTS 9/21/17

| Full Name | 2017 Payout | % of 2017 Total Payouts | SETTLEMENT PAYOUTS (based on % of 2017 Payouts) |
|---|---|---|---|
| ACUNA, ADAM | $ 5,749.62 | 1.58% | $ 3,606.14 |
| ADAMS, JASON | $ 7,390.39 | 2.03% | $ 4,635.22 |
| ADAMS, MARK | $ 5,581.73 | 1.54% | $ 3,500.84 |
| AGREGADO, WARREN | $ 3,527.65 | 0.97% | $ 2,212.53 |
| AGURCIA, ORALIA | $ 3,003.19 | 0.83% | $ 1,883.59 |
| ALCAZAR, MARIO | $ 478.32 | 0.13% | $ 300.00 |
| ALVAREZ, JULIO | $ 8,186.19 | 2.25% | $ 5,134.35 |
| AVILA, LEONARD | $ 478.32 | 0.13% | $ 300.00 |
| BARAJAS, JOSE | $ 3,470.19 | 0.95% | $ 2,176.49 |
| BARRIOS, ERNEST | $ 478.32 | 0.13% | $ 300.00 |
| BERUMEN, MARK | $ 2,950.96 | 0.81% | $ 1,850.83 |
| BLACKBURN, SHAWN | $ 2,616.92 | 0.72% | $ 1,641.32 |
| CAMACHO, ERIC | $ 2,477.08 | 0.68% | $ 1,553.62 |
| CARR, ROSARIO | $ 3,124.04 | 0.86% | $ 1,959.39 |
| CASTRO, JOSE | $ 4,823.65 | 1.33% | $ 3,025.37 |
| CERVANTES, NOE | $ 2,987.31 | 0.82% | $ 1,873.63 |
| CETINA, GONZALO | $ 3,915.00 | 1.08% | $ 2,455.47 |
| CHICE, CARMEN | $ 10,535.61 | 2.90% | $ 6,607.89 |
| COLEY, GREGORY | $ 13,863.46 | 3.81% | $ 8,695.11 |
| COTA, JOSEPH | $ 846.35 | 0.23% | $ 530.83 |
| DAVILA, LILIANA | $ 4,618.40 | 1.27% | $ 2,896.64 |
| DENA, PATRICIA | $ 4,111.40 | 1.13% | $ 2,578.65 |
| DIAZ, IVONNE | $ 478.32 | 0.13% | $ 300.00 |
| ESPANTO, TED | $ 24,227.31 | 6.66% | $ 15,195.28 |
| ESPARZA, ROSA | $ 2,236.15 | 0.62% | $ 1,402.50 |
| ESPINOZA, CYNTHIA | $ 1,200.29 | 0.33% | $ 752.82 |
| FELTON, RYAN | $ 3,319.62 | 0.91% | $ 2,082.05 |
| FINDLEY, RAYMOND | $ 1,173.46 | 0.32% | $ 735.99 |
| GALE, TIMOTHY | $ 2,116.40 | 0.58% | $ 1,327.40 |
| GALLEGOS, JAMES | $ 12,024.00 | 3.31% | $ 7,541.41 |
| GAMBOA, OTONIEL | $ 3,799.04 | 1.05% | $ 2,382.74 |
| GONZALEZ, NORMAN | $ 6,531.92 | 1.80% | $ 4,096.80 |
| GUERRERO, RUBEN | $ 3,442.50 | 0.95% | $ 2,159.12 |
| HARVEY, MARK | $ 478.32 | 0.13% | $ 300.00 |
| HEMENWAY, MICHAEL | $ 5,197.50 | 1.43% | $ 3,259.85 |
| HENDRICKS, JOSHUA | $ 2,905.62 | 0.80% | $ 1,822.39 |
| HERRERA, MARTIN | $ 6,355.38 | 1.75% | $ 3,986.07 |
| HOENES, IRMA | $ 3,675.41 | 1.01% | $ 2,305.20 |
| HOFFORD, CHRISTOPHER | $ 1,974.81 | 0.54% | $ 1,238.59 |
| HONEYCUTT, JEFFREY | $ 20,280.12 | 5.58% | $ 12,719.61 |
| HUERTA, DIANA | $ 1,960.75 | 0.54% | $ 1,229.77 |

| Full Name | 2017 Payout | % of 2017 Total Payouts | SETTLEMENT PAYOUTS (based on % of 2017 Payouts) |
|---|---|---|---|
| HUERTA, JORGE | $ 4,343.88 | 1.19% | $ 2,724.46 |
| ISAGAWA, KIYOTAKE | $ 1,540.74 | 0.42% | $ 966.35 |
| IZZO, JAMES | $ 2,621.43 | 0.72% | $ 1,644.15 |
| JIMENEZ, JR, JOSE | $ 4,105.39 | 1.13% | $ 2,574.88 |
| KEEF, SYLVIA | $ 478.32 | 0.13% | $ 300.00 |
| KOLBACH, JAMES | $ 4,245.23 | 1.17% | $ 2,662.59 |
| KOSAKA, DARRYL | $ 15,991.27 | 4.40% | $ 10,029.66 |
| KUBERRY, CHRISTOPHER | $ 8,143.27 | 2.24% | $ 5,107.43 |
| LARIVEE, ROBERT | $ 478.32 | 0.13% | $ 300.00 |
| LE, TUAN | $ 13,208.19 | 3.63% | $ 8,284.13 |
| LEON, DAVID | $ 3,380.19 | 0.93% | $ 2,120.04 |
| LEON, THOMAS | $ 2,174.54 | 0.60% | $ 1,363.86 |
| LEON, VANESSA | $ 3,932.45 | 1.08% | $ 2,466.42 |
| LOPEZ, JR, ARMANDO | $ 478.32 | 0.13% | $ 300.00 |
| LOPEZ, NICHOLAS | $ 758.08 | 0.21% | $ 475.46 |
| MANJARREZ, ESTEBAN | $ 3,439.38 | 0.95% | $ 2,157.17 |
| MC AVOY, TODD | $ 3,007.38 | 0.83% | $ 1,886.22 |
| MEISTER, JOSEPH | $ 10,483.27 | 2.88% | $ 6,575.07 |
| MONTGOMERY, JOHN | $ 612.69 | 0.17% | $ 384.28 |
| MORALES, KARINA | $ 9,566.13 | 2.63% | $ 5,999.84 |
| NEWTON, DONALD | $ 4,671.00 | 1.28% | $ 2,929.63 |
| NUNO, FRANCISCA | $ 5,773.99 | 1.59% | $ 3,621.42 |
| OGAS, RICHARD | $ 1,881.35 | 0.52% | $ 1,179.98 |
| ORELLANA GALINDO, IRNE | $ 478.32 | 0.13% | $ 300.00 |
| PARNELL, DOUGLAS | $ 478.32 | 0.13% | $ 300.00 |
| PARRA, EDWIN | $ 1,980.00 | 0.54% | $ 1,241.85 |
| PATINO, JOHNNY | $ 861.92 | 0.24% | $ 540.59 |
| PEREIDA, ELIZABETH | $ 2,785.60 | 0.77% | $ 1,747.12 |
| PINEDA, VANESSA | $ 7,962.19 | 2.19% | $ 4,993.86 |
| REAL, FRANCISCO | $ 1,119.46 | 0.31% | $ 702.12 |
| REYES, VIVIAN | $ 6,996.20 | 1.92% | $ 4,387.99 |
| RIVEROS, SAMUEL | $ 882.70 | 0.24% | $ 553.63 |
| RODAS, ISRAEL | $ 3,884.50 | 1.07% | $ 2,436.34 |
| RODRIGUEZ, ALEXIS | $ 3,129.23 | 0.86% | $ 1,962.64 |
| ROOT, WILLIAM | $ 545.54 | 0.15% | $ 342.16 |
| RUBIO, LILIANA | $ 1,400.06 | 0.39% | $ 878.11 |
| SAENZ, KRYSTAL | $ 659.34 | 0.18% | $ 413.54 |
| SANTIAGO, KIMBERLY | $ 1,039.98 | 0.29% | $ 652.27 |
| SERRANO, JESSICA | $ 3,751.96 | 1.03% | $ 2,353.21 |
| SERRATO, JUAN | $ 585.00 | 0.16% | $ 366.91 |
| STEHLY, MELISSA | $ 478.32 | 0.13% | $ 300.00 |

POA OT CAFE RETRO PAY HISTORY SEARCH RESULTS 9/21/17

| Full Name | 2017 Payout | % of 2017 Total Payouts | SETTLEMENT PAYOUTS (based on % of 2017 Payouts) |
|---|---|---|---|
| TAPIA, EDWIN | $ 3,975.23 | 1.09% | $ 2,493.25 |
| VALDIVIA, LUIS | $ 1,558.73 | 0.43% | $ 977.63 |
| VELEBIL, ANDREW | $ 5,206.85 | 1.43% | $ 3,265.72 |
| VILLALOBOS, ANDRES | $ 2,798.65 | 0.77% | $ 1,755.30 |
| VIRANI, SHAWN | $ 2,083.84 | 0.57% | $ 1,306.98 |
| WENER, PHILLIP | $ 478.32 | 0.13% | $ 300.00 |
| ZENDEJAS, WILLIAM | $ 4,496.54 | 1.24% | $ 2,820.21 |
|  | $ 363,522.63 |  | $ 228,000.00 |
|  | **Gross Amount of 2017 Payouts** |  | **Total Settlement Payout Value** |